141 So. 562

## HIGGINS v. SOVEREIGN CAMP, W. O. W.
### 6 Div. 64.

Supreme Court of Alabama.
March 10, 1932.

Rehearing Denied May 19, 1932.

B. J. Dryer, of Woodward, and Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

McCollough & McCollough, of Birmingham, and Huey, Welch & Stone, of Bessemer, for appellee.

FOSTER, J.

The only question on this appeal is a proper construction of the certificate of insurance in a fraternal benefit society.

The insured had been a member of the order in good standing about thirteen years when the certificate of insurance was by agreement canceled and a new one issued. As preliminary to its issuance, he signed an application for it, which contained a clause surrendering all rights under the old certificate, and containing the following statement: "The new certificate is to become effective on the first day of April, 1929, and to bear the date of April 1, 1925, and age of 44. It is understood and agreed that withdrawal values, if any, on the new certificate will be available to me only after I have made payments on said new certificate for three full years from date thereof." The new certificate had as its date of issue April 9, 1929, and contained the following provision: "The non-forfeiture values shall be computed as if this certificate had been issued on 1st day of April, 1925." It then contained "non-forfeiture options" conditioned upon "thirty-six monthly payments on this certificate," by which insured could accept at his option either (a) cash surrender value, or (b) a certificate for paid up insurance, or (c) extended insurance, all fixed in amount or term by an attached table. And that, if he did not make the election, there was automatically granted extended insurance. Insured paid one monthly amount as stipulated in the certificate, and no more after its issuance, and died about sixteen months thereafter, without exercising any of the nonforfeiture options, but his beneficiary claims that it was automatically extended for a period beyond the date of his death. Such effect of the contract is dependent upon the meaning of the provisions to which we have referred.

The only computation of nonforfeiture values set out in the contract or under its authority is the table referred to. That table fixes three columns of computations, called "non-forfeiture options." Their values are dependent upon the number of "the certificate year." At the end of the third certificate year, it should have a cash surrender value, or an amount of paid-up insurance value, or an extended insurance value, as set forth in each respective column. And so on at the end of each year to the twentieth.

It is conceded that, if the policy had been issued on April 1, 1925, and the premiums paid to and including April 1929, the nonforfeiture value would have been such as automatically to extend the insurance to a date beyond the death of the member. The question then is, Does the policy have that effect? In the first place, we observe that such is its language, taken by itself.

But appellee insists that the application in plain language shows that it means after thirty-six monthly payments are made after the issuance of the new certificate. But the application does not state that the thirty-six payments must be after its "issuance," but "from its date," and it also states that it

shall bear "the date of April 1, 1925." Its meaning is therefore consistent with the plain statement in the policy that for this particular purpose it shall be dated April 1, 1925. If it had only shown besides a date of issuance that it should bear an anterior date without expressing a purpose in doing so, we might conclude that such anterior date was to fix a more favorable premium rate—such as in Mutual Life Ins. Co. of New York v. Barrett, 215 Ala. 142, 110 So. 275.

But we can make no such assumption when it plainly states that the anterior date is fixed as a basis for making the very computation which appellant is seeking. The certificate in all its features has no other meaning. There is no computation of nonforfeiture values provided in the certificate except as we have indicated. Appellee drafted the certificate and caused it to be thus printed in blank form, showing a deliberate purpose to give it that effect. We also observe that the former certificate of this member contained no such nonforfeiture values or options. It seems to be so printed to have an anterior effect, for this purpose, for the benefit of its old members who surrendered their old contracts for the new ones.

In this connection it seems pertinent to say that, by the use of one set of formulas, they are giving the certificate both a retroactive and prospective effect, so that the same form of contract may be used for both purposes. Certainly it could have stipulated that, in recognition of the payments which this member had made, he could exercise one of the options within the time limit which is specifically stated in the table and without further payment. But in order that one set of words should have that meaning and also extend such options to embrace a continuing right, whose value was dependent upon the number of the "certificate year," this form of certificate was employed.

Counsel suggest that the computation due to the anterior dating has the effect of adding approximately four years to the number of years elapsing from date of issue only after the expiration of three years from such date. So that the first effective period in the table would be computed on the seventh certificate year thereby providing for extended insurance for seven years and two hundred and twenty-two days. But the table continues to carry as effective the third to sixth certificate year inclusive. This construction would eliminate all meaning to those terms set out in the table. We cannot presume that appellee in so stipulating meant nothing at all. We think also that the use of the terms in the certificate making such provision, "after thirty-six monthly payments on this certificate have been made," can be reconciled with our interpretation. For by the contract "this certificate," for this purpose, is as made in 1925. So that by such agreement all pay-

ments made between that date and the date of issue were treated as made on the new certificate.

A retroactive effect, as appellant claims, was given a certificate under a statute of Missouri, in the case of Rose v. Missouri State Life Ins. Co., 165 Mo. App. 646, 148 S. W. 181. There was in that transaction an anterior effect in this respect adjudged as the meaning of the antedating of a new policy in exchange for an old one, but, in order to create an immediately effective nonforfeiture value to extend the insurance, the insured executed a note or loan certificate for an amount sufficient to create a reserve enough to establish such value, though no reserve had accrued from the premiums theretofore paid.

Appellee argues therefore that as the withdrawal value necessary to extend the insurance is due to reserves, and this member had no reserve, therefore there was nothing on which to fix such extended value. Section 8444, Code, is pertinent on that claim. But if that section applies to a foreign corporation, there is nothing to show that appellee has not under its provisions accumulated sufficient surplus to justify it in appropriating from such surplus an amount sufficient to set up a reserve for its members of long standing so as to enable it to encourage them and even share in such surplus by voluntarily extending to them the nonforfeiture values, though they may not have by their monthly premiums paid enough to create such reserve. A contract of that sort is within the power of the company in the disposition of its surplus. We cannot presume whether there was or was not a surplus which they intended thus to appropriate; there is no statement that there was not. We have before us merely a contract which is in such form. We only affirm that the condition of the company may, we do not know, justify such a contract.

The statement of facts also is silent as to whether there had accumulated any reserve for this member through the long number of years in which he was in good standing. We have treated it as though there was no such accumulation of reserves, though appellee's counsel in brief refers to a small amount of such accumulation. But we think that appellee is concluded by its contract from contending either that there were not sufficient reserves, or that in this manner they were not appropriated out of the surplus, in the absence of a showing of fact which prohibited such a contract from being effective.

They made the contract, and we cannot say it is not such as they could or even ought under the circumstances to have made.

The case was tried on an agreed statement of facts by the court without a jury. We think that, instead of a judgment for appel-

lee, one should be and is hereby rendered in favor of appellant against appellee for $2,000, and interest from August 29, 1930, and all costs of this cause in this court and the circuit court.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

On Rehearing.

FOSTER, J.

Counsel for appellee have called our attention to a clause in the policy not treated by us in the opinion, nor in their briefs theretofore filed. The clause referred to is in paragraph 5 of "Special Provisions and Conditions," where it is provided that: "The cash loan, paid up and extended insurance values shall not become available until three years from the date of issue, as set forth on page one hereof."

Counsel feel that our opinion runs contrary to that clause in the policy, in connection with the other provisions which we mentioned in the opinion. On page 1 of the policy there is a clause to which we referred in our opinion that the "non-forfeiture values shall be computed as if this certificate had been issued on the 1st day of April 1925." Then follows: "Issued at Omaha, Nebraska, this the 9th day of April 1929." It is argued that we have not distinguished the date of the "availability" of the "non-forfeiture values" from their "computation," and that it means that they shall become available not before April, 1932, and then they shall be computed as though the policy had been dated in April, 1925; that thereby the first available "certificate year" is computed as the seventh for cash and loan values, and that the other certificate years in the table have no application.

Appellee is responsible for the language of this contract. It is on a printed form. If that construction had been intended, its meaning to that effect could have been easily so stated. But the language of the application, which is part of the contract, is that by agreement it shall "bear the date of April 1, 1925," and that the values shall be "available" after "three full years from its date," and the policy stipulates that such values shall be computed as of the 1st day of April, 1925. The newly cited clause in the policy, and that which fixes its date for computing values, and the date fixed in the application which the policy shall bear, and when the values shall be available, all naturally relate to the same occasion.

Counsel argue that their construction of the policy is borne out by the further consideration that on April 9, 1929, when the policy became effective, the period of three years after April, 1925, had elapsed, and that the clause could not have literal application as of that date because the policy was not effective three years after that date. But the clauses mentioned were printed, and were not written in the policy to fit accurately the date of April, 1925, which was the written part made to fit as near as may be that which was already printed for general use. When appellee undertook to fit such a date in such a contract, the meaning is that, though the values were stated to be available three years from the date agreed upon, they in fact became available by such agreement immediately after its effective execution, since three years had then expired; not, of course, that any such values accrued on April 1, 1928, three years after its date, because there was then no such contract.

This member had been in good standing about thirteen years before this policy was issued. He had aided in establishing its financial standing. It was not unreasonable that appellee should accord him some substantial benefits from his long and continuous contribution to its resources. This it undertook to do, as the contract imports, and as all parties agree, but by saying to him that we will cancel your old policy which contained no such values, and give you a new one and will fix its date April, 1925, instead of now, April, 1929, as the date when your values shall be computed, both in fixing the date of their availability, and therefore of necessity the method of determining their worth. It is admitted that the four-year period was granted the policyholder. The only question is whether it shall not become available until three years after the new policy becomes effective. We think that the rule of strict construction against appellee operates to a different result. We therefore maintain our view as expressed in the former opinion.

Application for rehearing overruled.