**SOVEREIGN CAMP, W. O. W., v. EPTING.**

No. 1783.

Court of Civil Appeals of Texas. Waco.

April 7, 1938.

Rehearing Denied May 5, 1938.

Judgment reversed and judgment rendered for defendant.

Stollenwerck & Stollenwerck, of Hillsboro, for appellant.

Andrew J. Bryan, of Hillsboro, for appellee.

ALEXANDER, Justice.

This action was brought by Eliza Epting to recover on an insurance certificate in the sum of $1,000, issued by Sovereign Camp, Woodmen of the World, on the life of A. B. Epting, and payable to plaintiff as beneficiary. In the trial court judgment was rendered for plaintiff and defendant appealed.

The suit was defended on the ground that the policy had lapsed for failure to pay monthly dues. Epting became a member of the fraternity and took out an insurance policy in October, 1910. He paid the premiums on this policy until March, 1929, when he made application to the fraternity to exchange his old policy for a new ordinary life certificate in the sum of $1,000. In accordance with the application, the fraternity, in May, 1929, issued the new certificate, which provided for the payment of monthly premiums. Premiums on the new certificate were paid monthly as they accrued until July 1, 1930, when, upon default, notice was given by the fraternity of such failure to pay the premiums. Epting then wrote the fraternity, explaining his inability to pay the premiums due to financial troubles, and the fraternity advanced, by way of loan, the premiums on the certificate up to January, 1931. After January, 1931, no further premiums were paid, nor were any further advancements made. He died in December, 1931. Upon trial the fraternity contended that the certificate had lapsed for failure to pay premiums, while plaintiff contended that it was kept in force by virtue of the automatic premium loan provisions in the certificate. The terms of the certificate and the application therefore are, except for filled in dates, names, and amounts, identical with the certificate and application involved in the case of Sovereign Camp, W. O. W., v. Alston, Tex.Civ.App., 82 S.W. 2d 710. In that case the same question arose concerning a similar forfeiture and the same automatic premium loan provisions of this standard certificate of this fraternity, and this court held that the policy had lapsed for failure to pay monthly premiums, and that the nonforfeiture values were not available until 36 monthly premi-

ums had actually been paid on the new certificate. The Supreme Court refused a writ of error therein, and subsequently, when the same question arose again, adhered to this holding in the case of Sovereign Camp, W. O. W. v. Carroll, Tex.Com.App., 110 S.W. 2d 556. On these authorities, we hold that the nonforfeiture values, and thus the automatic premium loan provisions, were not available to Epting until 36 premiums had been paid on the new certificate, which could not have been before March, 1932, several months after Epting's death.

Appellee contends, however, that in this particular case the parties put a different construction on the terms of the policy. This contention is based on two letters written by the president of the fraternity to Epting and his wife, and the fact that the fraternity advanced the premiums on the policy for the months between July, 1930, and January, 1931. It appears that in October, 1930, upon notice of default of premium payments beginning the preceding July, Epting wrote to the fraternity as follows: "I did intend to make the payments on my insurance and did not want to drop it but on account of crop failure and low prices on cotton I cannot make them at this time. I feel like I have been out too much money to drop it now but I cannot get the money right now. I will appreciate anything you can do to help me on with it." Whereupon, the president wrote:

"Your letter of recent date has just been brought to my attention and I regret very much to note that your circumstances have been such that you have been unable to pay your monthly installments when due.

"It is my desire to aid the loyal members of our Association as far as possible in maintaining their insurance protection when the need is urgent. You have been a member of this Association for a considerable period of time, and have always been reasonably prompt in making your monthly payments, and I feel that the existing emergency warrants such assistance in this connection as may be authorized in your particular case. Accordingly, we will aid you to the extent of advancing the installments due from you for the past three months but now in arrears and we will also advance each month for three months a sum sufficient to pay your regular installments for that period. * * *

"During the month of January you should resume the payment of your regular installments to the Financial Secretary of your Camp. You may, if you wish, at the same time pay the Financial Secretary of your Camp the installments which we have advanced for you. This is not obligatory; that is to say, in order to continue your insurance in force you need only pay the Financial Secretary of your Camp the January installment and all subsequent installments when due, but in that event the installments advanced for you will remain as a charge against your certificate with interest thereon at 5% per annum compounded annually. We would therefore urge you to repay the advances made just as soon as your circumstances will permit."

Accordingly, the six months' premiums, to January 1, 1931, were advanced. On January 9, 1931, the president again wrote Epting that the advancements would end with December, 1930, and "thereafter to keep your insurance in force and your membership in good standing, such payments must be made to the financial secretary of your camp on or before the last day of each month." It will be noted that the insured, in making his request for aid, did not base the same on any supposed contractual right to a loan under the terms of his policy, and the president of the fraternity granted such assistance for a limited time only, not in recognition of any contractual obligation to do so, but because the insured had been a member of the fraternity, paying dues thereto, for a long number of years, and "the existing emergency warrants such assistance in this connection as may be authorized in your particular case." The fact that the letter written by the president in response to the insured's appeal for help was a form letter is urged by appellee as a circumstance to show that the insured in this instance was not granting a special favor as a gratuity from the fraternity. This circumstance does indicate that there must have been a large number of such requests from policyholders with corresponding favors from the fraternity, but it should be remembered that this was during the depression, when many loyal policyholders throughout the county were lapsing their policies because of inability to pay premiums. The mere fact that the fraternity was charitable to a large number of its members during such trying times is no evidence of a recognition of a contractual obligation to furnish such relief for a longer period of time.

For these reasons, we do not believe that this case differs from the previous cases

cited above on this point, and hold the certificate had lapsed for nonpayment of premiums.

The judgment of the trial court is reversed and judgment here rendered for defendant.

GEORGE, J., took no part in the consideration and disposition of this case.